UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
:
:
COLONY INSURANCE COMPANY,   :
:  20-CV-6098-ARR-SJB
               Plaintiff,   :
:  <u>NOT FOR ELECTRONIC OR</u>
   -against-   :  <u>PRINT PUBLICATION</u>
:
28-41 STEINWAY, LLC,   :  **OPINION & ORDER**
:
               Defendant.   :
:
:
------------------------------------------------------------------ :
                                                                      X

ROSS, United States District Judge:

Plaintiff Colony Insurance Company ("Colony") moves for summary judgment and declaratory judgment that it does not have a duty to indemnify or defend defendant 28-41 Steinway, LLC ("28-41 Steinway") in an action against 28-41 Steinway in New York state court. For the reasons set forth below, I grant plaintiff's motion.

## BACKGROUND

The parties agree that plaintiff issued General Commercial Policy No. 103 GL 0091795-00 to 28-41 Steinway (the "Policy"). The Policy contains classification information identifying 28-41 Steinway Street, Astoria (the "Premises") as the covered premises, but the parties dispute the relevance and meaning of certain policy terms. *See* Pl.'s Statement of Material Facts in Supp. Mot. for Summ. J. ¶¶ 1-5 ("Pl.'s 56.1"), ECF No. 18-13; Def.'s Counter-Statement of Material Facts in Opp'n Mot. for Summ. J. ¶¶ 1-5 ("Def.'s 56.1"), ECF No. 21-5.

Julian Figueroa, a former employee of concrete vendor Corona Ready Mix, has sued his former employer, 28-41 Steinway, and others in New York Supreme Court, Queens County. *See* Pl.'s 56.1 ¶ 7 (citing *Julian Figueroa v. Empire Sewer & Water, Inc.*, Index No. 159739/2018

(N.Y. Sup. Ct.) ("Underlying Action")); Def.'s 56.1 ¶ 7. Mr. Figueroa alleges that, while standing on Steinway Street, his foot was run over by an excavator, and contends that his injury was partially a result of 28-41 Steinway's negligence. Def.'s 56.1 ¶¶ 12–13. Defendant disputes plaintiff's characterization of the Underlying Action as "seek[ing] recovery for injuries he allegedly sustained on August 6, 2018 . . . while he was working on the roadway in front of the building located at 28-41 Steinway Street," instead claiming that "[t]he scope of work allegedly related to the maintenance of the sewage system of 28-41 Steinway Street, Astoria, New York." *Id.* ¶ 8. However, the parties agree that Mr. Figueroa alleges that his foot was run over by an excavator and that the *project* he worked on involved the sewer system at the Premises. *See id.* ¶¶ 8–9. Plaintiff asserts that 28-41 Steinway does not own the roadway in front of the Premises (where the accident occurred), but defendant argues that it "owned, and had a duty to maintain, the sewer piping and system that was being repaired at the time of this alleged incident." *Id.* ¶ 14. Finally, defendant disputes Colony's assertion that defendant admitted that neither Figueroa nor any defendant in the Underlying Action other than 28-41 Steinway were tenants at the Premises. *See id.* ¶ 17. Based on the record, I find that defendant did agree that each defendant in the Underlying Action was not a tenant of the Premises at the time of the accident and that plaintiff did not suffer any injuries while a tenant of the Premises. *See* Decl. of Jonathan Harwood, Ex. G ¶¶ 11–14, ECF No. 18-8 (defendant's interrogatory responses stating that Mr. Figueroa, Empire Sewer & Water, Colarusso Contracting, and Corona Ready Mix were not tenants of 28-41 Steinway at the time of Figueroa's injury).

Defendant does not dispute that the Policy applies to Mr. Figueroa's claims against 28-41 Steinway.[1] *See generally* Def.'s Mem. in Opp'n to Mot. for Summ. J. ("Opp'n"), ECF No. 21. There are three relevant portions of the Policy. First, the Insuring Agreement obligates Colony to "pay those sums that the insured [*i.e.*, 28-41 Steinway] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' *to which this insurance applies*" and disclaims Colony's "duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' *to which this insurance does not apply*." Pl.'s 56.1 ¶ 1 (emphasis added). Next, the "Policy Declarations" classify coverage for the Premises as "Lessor's Risk Only," a term that is not defined anywhere in the Policy or any supplemental document. *Id.* ¶ 2; *see* Pl.'s Reply Mem. in Supp. Mot. for Summ. J. 5–6 ("Reply"), ECF No. 23 (acknowledging that the term is undefined in the Policy but asserting it has "a definite and precise meaning"). Finally, an endorsement to the Policy containing the "[b]usiness [d]escription" of "Lessor[']s risk" again "modifies insurance" under the "Commercial General Liability [c]overage [p]art," including that "[c]overage under this policy is *specifically limited to those classification codes listed on the Policy Declarations* . . . . No coverage is provided for any classification code or operation performed . . . not specifically listed in the Polic[y] Declarations." Pl.'s 56.1 ¶ 3 (emphasis added).

## LEGAL STANDARD

Summary judgment should be granted where the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer*

---

[1] Defendant notes that the policy provided was both Commercial General Liability and Commercial Property insurance, and that it paid separate premiums for each coverage part. Opp'n 6–7; Def.'s 56.1 ¶ 6. However, the parties' arguments on summary judgment focus solely on the Commercial General Liability coverage.

3

*v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). In deciding this motion, I must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment," here 28-41 Steinway. *Spinelli v. City of New York*, 579 F.3d 160, 166 (2d Cir. 2009) (quotation omitted).

Although the basis of my jurisdiction is diversity of citizenship, the parties have not conducted any choice-of-law analysis. Both parties treat New York law as controlling. *See* Pl.'s Mem. in Supp. Mot. for Summ. J. ("Pl.'s Mem.") 10, ECF No. 18-12 (arguing that "New York court[s] have made it clear that . . . classification limitations constitute part of a policy's insuring agreement"); Opp'n 10 (referring to "[w]ell-established principles under New York law governing the interpretation of insurance contracts").

"Under New York law, insurance policies are interpreted according to general rules of contract interpretation." *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 98 (2d Cir. 2012). "[T]he words and phrases in a contract should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *Id.* at 99 (quotation and alteration omitted). A term is ambiguous if it is "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Id.* (citation omitted).

Whether the Policy is ambiguous is a question of law for me to decide. *Fireman's Fund Ins. Co. v. OneBeacon Ins. Co.*, 495 F. Supp. 3d 293, 300–01 (S.D.N.Y. 2020), *aff'd*, 49 F.4th 105 (2d Cir. 2022). If I conclude that the Policy is ambiguous, I "may consider extrinsic evidence to ascertain the parties' intent at the formation of the contract." *Olin Corp.*, 704 F.3d at 99. Where extrinsic evidence does not resolve the ambiguity, New York courts "have consistently construed

4

ambiguous policy provisions in favor of coverage and against the insurer who drafted the policy." *City of New York v. Evanston Ins. Co.*, 830 N.Y.S.2d 299, 302 (App. Div. 2007) (collecting cases).

Finally, "[a]n insurer's duty to defend is broader than its duty to indemnify and is generally determined by comparing the allegations of the complaints to the terms of the relevant policies," a duty that extends "even if 'facts outside the four corners of those pleadings indicate that the claim may be meritless or not covered.'" *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 97 (2d Cir. 2002) (internal citation omitted) (quoting *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 63 (1991)). However, the duty to defend is extinguished "if '[the insurer] establishes as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision.'" *Id.* (quoting *Allstate Ins. Co. v. Zuk*, 78 N.Y.2d 41, 45 (1991)). Accordingly, I may "consider[] extrinsic evidence where that evidence may conclusively establish that an insurer faces no possible liability." *Id.*

## DISCUSSION

Plaintiff argues that it is entitled to a declaration that it is not required to defend 28-41 Steinway or to indemnify the defendant for any damages awarded in the Underlying Action because the "lessor's risk only" limitation in the Policy precludes indemnification for tort claims by non-tenants and for injuries sustained outside of the Premises. Defendant responds that (1) that the "lessor's risk only" language is undefined and ambiguous; (2) that the "lessor's risk only" language means the Policy covers damages owed by 28-41 Steinway because the sewer work was performed to maintain the premises; (3) the factual record in the Underlying Action is not sufficiently developed to present uncontested issues of material fact in this action; and (4) that Colony still has a duty to defend 28-41 Steinway in the Underlying Action.

5

1. *The "Lessor's Risk" Language is Unambiguous in the Context of Insurance and Does Not Cover Tort Claims From Non-Tenants Injured Off the Premises*

Plaintiff notes that "[l]essor[']s risk policies provide extremely limited coverage to building owners who lease out their property, applying only to claims by tenants against property owners for property damage or bodily injury sustained while on the insured premises," and directs my attention to a number of publicly available sources defining "lessor's risk" policies in the context of lessors being sued for damages by their tenants. *See* Pl.'s Mem. 10–11. 28-41 Steinway notes that "lessor's risk" is undefined in the policy and that the requirement that Mr. Figueroa be a tenant at the Premises is not set out anywhere in the policy. Opp'n 7–8. Defendant further asks that I find the term ambiguous and apply New York's *contra proferentem* rule against Colony. *Id.* at 10–11.

First, an undefined term is not automatically ambiguous; as contracts, insurance policies are interpreted in context and part of that context is "the customs, practices, usages and terminology as generally understood in the particular trade or business." *Olin Corp.*, 704 F.3d at 99 (citation omitted); *see Superhost Hotels Inc. v. Selective Ins. Co. of Am.*, 75 N.Y.S.3d 124, 126 (App. Div. 2018) (finding no ambiguity in the term "wear and tear" even though the term was undefined).

I begin with the text of the "lessor's risk only" classification. Its plain meaning imposes two limitations. First, the classification applies to "lessor's" risk. A "lessor" is "[s]omeone who conveys real or personal property by lease," or a "landlord." *Lessor*, Black's Law Dictionary (11th ed. 2019). The common definition aligns with the legal one; "lessor" means "[a] person who leases something, esp. land or property, to another." *Lessor*, Oxford English Dictionary, https://www.oed.com/view/Entry/107486?redirectedFrom=lessor#eid (last visited Jan. 23, 2023). The term "lessor's" thus modifies the "risk" covered by the policy to limit covered risks to those risks incurred by landlords. Next, the word "only" further modifies the term "lessor's risk" to

6

exclude other coverage types. Put together, the plain meaning of the text suggests that 28-41 Steinway's coverage under the Policy is limited solely to those risks incurred by landlords.

Defendant argues that the Underlying Action nonetheless falls within the Policy because "Figueroa alleges that [28-41] Steinway is liable since the subject incident happened while performing maintenance on the insured's sewer line." Opp'n 11. Although defendant does not say so directly, this argument is effectively that "lessor's risk only" coverage could apply to damages created by a lessor's *maintenance* of a leased building, independent of any requirement that harm be done to a lessee. Defendant's position might be correct based on the purely textual meaning of "lessor's risk only," but I am also required to examine this phrase in light of "the customs, practices, usages and terminology" of insurance. *Olin Corp.*, 704 F.3d at 99. Colony has shown, and defendant has not refuted, that "lessor's risk only" has a specialized meaning in insurance that "appl[ies] only to claims by tenants against property owners for property damage or bodily injury sustained while on the insured premises." Pl.'s Mem. 10–11 (collecting sources). I agree that the term "lessor's risk" in insurance has a specialized meaning that limits insurance coverage to damages sought by property tenants, or at the very least to injuries suffered on the landlord's property. *See, e.g.*, *Lessor's Risk Only Insurance*, Insureon, https://www.insureon.com/real-estate-business-insurance/lessors-risk-only (last visited Jan. 23, 2023) ("Lessor's risk only (LRO) covers commercial property landlords against certain risks and *lawsuits from their tenants*." (emphasis added)); Stephen Wachira, *Essential Guide: Lessor's Risk Only Insurance*, Pathpoint (Dec. 13, 2022), https://www.pathpoint.com/blog/lessors-risk-insurance ("Lessor's risk insurance is a type of liability coverage that protects a building owner from risks that may arise due to damage, destruction, theft, and vandalism on a *property leased to a tenant*. The policy also applies if the tenant or the tenant's employee experiences *physical injury on the premises*." (emphasis added)).

7

Because the Policy indisputably contains the "lessor's risk only" classification and because the endorsement limits coverage "to those classification codes listed on the Policy Declarations," Pl.'s 56.1 ¶ 3; Def.'s 56.1 ¶ 3, I agree with the plaintiff and find that the Policy unambiguously does not cover claims by non-tenants, nor does it cover injuries that occurred off the Premises.

2. *There Are No Disputes of Material Fact that Would Potentially Entitle Defendant to Coverage under the Policy*

Defendant argues that "there has been no determination [in the Underlying Action] as to the liability of [28-41] Steinway and the issue of whether the repairs being performed to that sewer drainage system are considered a part of the structure of the insured property." Opp'n 5. Because these issues have not been determined, 28-41 Steinway suggests that this means there are remaining issues of material fact in this action such that summary judgment is not possible. *See id.* Colony responds that the issues of fact identified by defendant are immaterial and unsupported. *See* Reply 2–3.

Defendant does not identify which facts in the Underlying Action must be determined, other than the question of whether the sewer drainage system is "considered a part of the structure of the insured property." Opp'n 5. I have already decided that the "lessor's risk only" classification means that Colony will only be required by the Policy to indemnify 28-41 Steinway for damages if the Underlying Action involved an injury suffered on the Premises or if 28-41 Steinway were sued by a tenant. Whether or not the sewer drainage system is "part of the structure" of the Premises is immaterial to these questions.

As I have noted, defendant conceded in its discovery responses that no defendant in the Underlying Action is a tenant of the Premises, and neither is Mr. Figueroa. *See* Decl. of Jonathan Harwood, Ex. G ¶¶ 11–14. Therefore, the only question is whether Mr. Figueroa could have been on the Premises when the accident occurred. The parties agree that Mr. Figueroa alleged he was

8

injured while standing in Steinway Street in Astoria. *See* Def.'s 56.1 ¶ 20 (agreeing Figueroa alleges the accident occurred while standing in the street). However, Mr. Figueroa has alleged that 28-41 Steinway owned the street on which the accident occurred. *See* Decl. of Jonathan Harwood, Ex. B ¶¶ 46–47, ECF No. 18-3. It is clear from publicly available information that Steinway Street is not owned by defendant. *See Tax Map of 28-41 Steinway Street*, N.Y.C.'s Zoning & Land Use Map, https://zola.planning.nyc.gov/about/ (choose "BBL Lookup" from dropdown; then enter "Queens" for "Borough"; enter "663" for "Block"; and enter "5" for Lot) (last visited Jan. 23, 2023) (demonstrating that the lot does not extend into Steinway Street). And Mr. Figueroa reiterated in his depositions that at the time his foot was run over, he "was being careful that there were no cars coming because we were very close to the yellow line separating the travel lane," *i.e.*, he was positioned near the center of Steinway Street. Decl. of Jonathan Harwood, Ex. D 87:5-7, ECF No. 18-5.

Accordingly, there are no material facts in dispute that would suggest that Mr. Figueroa was on the Premises when he was injured. Therefore, there is no question that the Policy does not provide coverage for any injuries that may be attributed to 28-41 Steinway in the Underlying Action, and I grant summary judgment to plaintiff on this point.

3. *Colony Has No Duty to Defend in the Underlying Action*

Defendant argues that "Colony must at least defend [28-41] Steinway" since "an insurer's duty to defend is broader than its duty to indemnify," even if it would not be found obliged to indemnify at the conclusion of the Underlying Action. Opp'n 11. Although the duty to defend arises based on the underlying complaint, *Burt Rigid Box*, 302 F.3d at 97, this duty ends if an insurer can establish, including via the use of extrinsic evidence, "that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision," *id.* (quotation omitted). Such circumstances are present here; the Policy applies only

9

to liability to tenants or those injured on the premises and based on Mr. Figueroa's own testimony there is no factual or legal basis upon which Colony would be called upon to indemnify 28-41 Steinway for any damages owed in the Underlying Action. I hold that Colony has no duty to defend 28-41 Steinway in the Underlying Action.

## CONCLUSION

The plaintiff's motion for summary judgment is granted. Plaintiff is directed to submit a draft declaratory judgment to the court on or before January 30, 2023.

SO ORDERED.

Dated:   January 23, 2023                             /s/
         Brooklyn, NY                             Allyne R. Ross
                                               United States District Judge